UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YARLEN HENRY, WADE GARBIE,
DAWN WORTHAM, and
KRISTAL SCOTT,

        Plaintiffs,

v.

CITY OF DETROIT and
DETROIT POLICE OFFICERS
ASSOCIATION,

        Defendants.
_____/

No. 21-12794

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT DETROIT POLICE OFFICERS ASSOCIATION'S MOTION TO DISMISS [13] AND DENYING PLAINTIFF KRISTAL SCOTT'S MOTION FOR SANCTIONS [22]**

In a two-count complaint alleging violations of the Americans with Disabilities Act ("ADA"), Plaintiffs Yarlen Henry, Wade Garbie, and Dawn Wortham bring one claim against the City of Detroit only (Count I) and Plaintiff Kristal Scott brings one claim against the Detroit Police Officers Association ("DPOA") only (Count II). The matter is before the Court on the DPOA's motion to dismiss (ECF No. 13) and Scott's motion for sanctions against the DPOA (ECF No. 22).[1] Both motions have been responded to and the DPOA has filed a reply in support of its motion to dismiss. (ECF Nos. 17, 18, 24.) Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), these motions will be decided on the briefs and without oral argument. For the reasons below, the Court GRANTS the DPOA's motion to dismiss and DENIES Scott's motion for sanctions.

---

[1] The City of Detroit has filed two motions to sever. (ECF Nos. 10, 11.) Those motions will be addressed by the Court in a future opinion and order.

1

I. **Background**

According to the complaint, around the time of Detroit's bankruptcy in 2014, Detroit Mayor Michael Duggan set out to find ways to cut costs for the City and as a part of this endeavor, he asked Detroit Police Department ("DPD") Chief Craig to do the same within his department. Plaintiffs aver that "Chief Craig issued a mandate that the DPD should hire as many full duty officers as possible" and "[i]mplicit in this 'mandate' was that the DPD would forcibly retire as many disabled officers as possible under the guise of the Collective Bargaining Agreement." (ECF No. 1, PageID.5.) The relevant provision in the collective bargaining agreement is Section 34(E), which states that "[n]othing in this Article shall affect the right of the Department under the Charter of the City of Detroit to refer employees for duty or non-duty disability pensions." (*Id.*) The agreement had been executed in October of 2014. (ECF No. 17-2.)

With regard to Scott ("Plaintiff"), she was employed by the Detroit Police Department beginning in 2004. In 2013, she suffered a torn meniscus. Due to the injuries relating to her legs and lower back, she requested and was granted a restricted-duty assignment at the DPD Gun Desk starting in August of 2012. The City considered Plaintiff's position at the gun desk an accommodation. The City later recommended that Plaintiff be forcibly retired. Her retirement was approved on or around August 3, 2017 and it became effective on September 7, 2017. Plaintiff subsequently appealed this decision, and it was affirmed on March 1, 2018.

Plaintiff filed a charge of discrimination against the DPOA on January 12, 2018. (ECF No. 17-3.) She now alleges the DPOA violated the ADA by "agreeing to and enforcing a collective bargaining agreement that permitted disability discrimination" and

2

"enforcing its facially discriminatory CBA policy regarding disabled employees, which amounted to the City's ability to discriminatorily retire Plaintiff." (ECF No. 1, PageID.20.)

## II. The DPOA's Motion to Dismiss

The DPOA seeks dismissal of Plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6) as untimely. Plaintiff opposes dismissal, arguing she has brought a timely ADA claim against the DPOA.

### A. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. "[A] complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barney v. PNC Bank*, 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To survive a Rule 12(b)(6) motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### B. Analysis

The ADA prohibits a "covered entity" from discriminating against qualified individuals with disabilities. 42 U.S.C. § 12112(a). "Covered entit[ies]" include

employers and labor organizations. 42 U.S.C. § 12111(2). A plaintiff who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 827 (6th Cir. 2019); *see also Parry v. Mohawk Motors of Mich.*, 236 F.3d 299, 309 (6th Cir. 2000). The DPOA argues that because the collective bargaining agreement was executed on October 1, 2014 and Plaintiff's EEOC charge against it was filed more than 300 days later on January 12, 2018, her claim is untimely. Plaintiff's position is that her claim is timely because it was filed within 300 days from the date she was allegedly "forcibly retired"—September 7, 2017.

As a threshold matter, the Court notes that Plaintiff does not allege the DPOA itself was involved in the decision to forcibly retire her. Instead, Plaintiff alleges that the DPOA violated the ADA by "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this title . . . ." *See* § 12112(b)(2). According to Plaintiff, the collective bargaining agreement led to the City's subsequent failure to accommodate her disability.[2] She notes that the accrual date for a failure to accommodate claim under the ADA is the date the involuntary leave of absence commenced. But the cases Plaintiff relies upon for this proposition involved a claim against an employer for its failure to provide an employee with reasonable accommodations. *See O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x

---

[2] Plaintiff also alleges in her complaint that the bargaining agreement is facially discriminatory. To the extent her claim stems from this allegation, it is untimely because the agreement was executed in 2014.

4

605, 613-14 (6th Cir. 2020); *Nakis v. Potter*, 01 Civ.10047 (HBP), 2004 U.S. Dist. LEXIS 25250, at *47 (S.D.N.Y. Dec. 15, 2004). Plaintiff does not cite to any caselaw involving a claim against a labor union for entering into a collective bargaining agreement due to an employer's failure to accommodate years later. *See generally Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 487 (2d Cir. 1985) (noting that "a union's liability depends on its responsibility for the discrimination") (internal quotation marks and citation omitted). And while Plaintiff claims the DPOA violated the ADA by enforcing a discriminatory agreement, there are no allegations regarding any enforcement action or conduct beyond execution of the agreement on the part of the DPOA that allegedly led to the failure to accommodate. Thus, the Court finds Plaintiff has failed to state a timely claim for relief under the ADA against the DPOA.

### III. Plaintiff's Motion for Sanctions

Plaintiff moves for sanctions against the DPOA under Federal Rule of Civil Procedure 11 and/or 28 U.S.C. § 1927. Plaintiff argues she is entitled to an award of sanctions because the DPOA filed its motion without relying on any caselaw and without first seeking concurrence as set forth in Eastern District of Michigan Local Rule 7.1. The DPOA apologizes for not seeking concurrence from Plaintiff, stating this was an accidental oversight, but argues sanctions are not warranted in this case.

The purpose of the concurrence requirement in Local Rule 7.1 is to ascertain whether the subject matter of the contemplated motion can be resolved by stipulated order. Here, Plaintiff vigorously contested the motion and thus the DPOA's failure to seek concurrence did not harm Plaintiff. *See Nathanson v. Fife*, No. 18-11509, 2019 U.S. Dist. LEXIS 5388, at *11 (E.D. Mich. Jan. 11, 2019) (noting that courts in this

jurisdiction have "routinely waived" the requirement to seek concurrence "when it is obvious that the opposing party would not have concurred in the requested relief"). Thus, the Court declines to award sanctions on this basis. And with regard to the lack of caselaw, this may have been due to Plaintiff's unique theory of liability—one the Court has found is insufficient to state a timely claim for relief under the facts pled here. The Court therefore denies Plaintiff's request for an award of sanctions.

## IV.  Conclusion

For the foregoing reasons, the DPOA's motion to dismiss is GRANTED, and Plaintiff's motion for sanctions is DENIED. Accordingly, Count II of the complaint, Plaintiff Scott's sole claim and the only claim brought against the DPOA, is dismissed.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: April 19, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 19, 2022, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager